UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-513-RJC
(3:17-cr-137-RJC-DCK-2)

| | |
|---|---|
| JAMES MICHAEL HARDIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and "Affidavit" addressing the statute of limitations, (Doc. No. 3).

**I.     BACKGROUND**

Petitioner was indicted for: Count (1), conspiracy to distribute and possess with intent to distribute cocaine base and cocaine, and "five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine" and "two hundred and eighty (280) grams or more of a mixture and substance containing a detectable amount of cocaine base… are attributable to, and were reasonably foreseeably by … JAMES MICHAEL HARDIN…." (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846); Count (5), possession of a firearm in furtherance of a drug trafficking crime (Count (1)); and Count (6), possession of a firearm by a convicted felon. (3:17-cr-137, Doc. No. 37). The Government filed an Information pursuant to 21 U.S.C. § 851 notifying Petitioner of the intent to rely on two prior convictions for felony drug offenses. (Id., Doc. No. 40).

Petitioner entered into a Plea Agreement in which he agreed to plead guilty to Count (1). (Id., Doc. No. 63). Petitioner admitted he is guilty as charged in Count (1) for which his sentencing

1

exposure was not less than 10 years and not more than life. Petitioner acknowledged that he qualifies for enhanced sentencing of not less than twenty (20) years nor more than life imprisonment pursuant to § 851. The Government agreed to withdraw the § 851 Information at the time of sentencing if Petitioner complied with the Plea Agreement. (Id., Doc. No. 63 at 2).

The Plea Agreement provides that the parties agreed to jointly recommend: "[t]he amount of cocaine base ("crack cocaine") that was known to or reasonably foreseeable by the Defendant was in excess of eight hundred forty (840) grams but less than two thousand eight hundred (2,800) grams, resulting in a base offense level of 32," that Petitioner should receive a two-level weapon enhancement, and that he is not eligible for the "safety valve." (Id., Doc. No. 63 at 2-3). The parties retained the ability to argue their respective positions regarding other specific offense characteristics, cross-references, special instructions, reductions, enhancements, and adjustments, as well as departures or variances.

The Plea Agreement provides that Petitioner discussed the rights to withdraw a plea with defense counsel and knowingly and expressly waived any right to withdraw the plea once the Magistrate Judge accepted it. (Id., Doc. No. 63 at 5). The Plea Agreement further provides that Petitioner understands that by pleading guilty he was waiving his appellate and post-conviction rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id., Doc. No. 63 at 5).

The Plea Agreement provides that Petitioner stipulates there is a factual basis for the plea, that he read and understood the written Factual Basis filed with the Plea Agreement, that the Court and U.S. Probation Office may use it to determine the applicable advisory guideline range and appropriate sentence unless Petitioner's right to object is explicitly reserved in the Factual Basis itself. (Id., Doc. No. 63 at 5). The Factual Basis filed in support of the Plea Agreement provides:

2

From at least as early as in or about 2011 through on or about April 25, 2017, in Gaston County and elsewhere, Defendant Albert Hankerson and others were members of a conspiracy to distribute and to possess with intent to distribute cocaine and at least 280 grams of cocaine base/crack cocaine, a Schedule II controlled substance.

On May 9, 2011, law enforcement utilized a confidential human source (CHS) to purchase 28 grams of powder cocaine from Anthony PETTUS. PETTUS met with the CHS to discuss the quality of cocaine, and asserted that it was good enough that the CHS could easily cook it into crack cocaine and double his/her profits. PETTUS gave a name of a good cook (of crack cocaine) and told the CHS to call that cook for a demonstration of how to cook it correctly. PETTUS wanted the CHS to get more money so he could sell the CHIS more ounces of cocaine. PETTUS took the drug payment from CHS and then called a courier to drive up to them, where the courier then handed the ounce of cocaine to CHS.

In 2013 through 2017, the law enforcement team debriefed with several confidential human sources – whose information has been corroborated to the extent possible, with nothing found to be false; thus I submit they are credible and reliable – and they described leader Anthony Jarbar PETTUS's use of residences in Gastonia to store and sell cocaine and cocaine base (commonly called "crack cocaine"), and of couriers, many of whom are PETTUS family members. The CHSs explained that PETTUS and his couriers were aware that they were crack cocaine dealers and that the cocaine they purchased from PETTUS would be cooked into crack. They establish that ANTHONY PETTUS, Albert HANKERSON, JAMES HARDIN, XAVIER HARDIN, and Tammy SMITH are responsible for trafficking in well in excess of 5 kilograms of cocaine and well in excess of 280 grams of crack cocaine since at least as early as 2011.

On September 18, 2014, law enforcement initiated a "knock and talk" consensual encounter at Anthony PETTUS's grandmother's residence in Gastonia. Officers could smell the aroma of marijuana emitting from the residence, and PETTUS admitted to previously smoking marijuana. Officers obtained a search warrant for the residence and recovered approximately 10 grams of marijuana. Additional items that law enforcement located in PETTUS's Ford 500 and collected during the search were: five .38 caliber ammunition rounds, PETTUS'S North Carolina identification card, a Gaston County Animal Control Vaccination receipt with PETTUS'S name on it, two cell phones, and $5,025 in U.S. currency. Law enforcement also located a box of sandwich baggies and a set of digital scales inside of a charcoal grill beside the residence.

On March 26, 2015, law enforcement in Gastonia utilized a CHS to purchase approximately 83 grams of cocaine from ANTHONY PETTUS, who utilized his courier, James HARDIN.

3

On March 30, 2015, law enforcement in Gastonia utilized the CHS to pay $1,350 for the portion of the cocaine from March 26 that PETTUS "fronted" to the CHS.

On April 23, 2015, law enforcement utilized a CHS to purchase approximately one ounce (28 grams) of cocaine from Albert HANKERSON at his residence in Gastonia. The CHS and HANKERSON briefly spoke about HANKERSON's recent cocaine purchase from ANTHONY PETTUS. HANKERSON complained that the quality was poor, because it would not cook into crack cocaine correctly, so HANKERSON had to take it back to PETTUS. HANKERSON said PETTUS had to swap it out for better quality cocaine and "make it right."

On April 30, 2015, law enforcement in Gastonia utilized a CHS to purchase approximately two ounces (56 grams) of cocaine for $2,700 from ANTHONY PETTUS, who utilized his couriers, Tammy SMITH and RANDALL PETTUS….

On May 7, 2015, law enforcement in Gastonia utilized a CHS to purchase approximately 125 grams of cocaine from ANTHONY PETTUS, who utilized his courier, Tammy SMITH.

On May 13, 2015, law enforcement utilized a CHS to purchase approximately 42 grams of cocaine from Albert HANKERSON at his residence in Gastonia.

On June 18, 2015, law enforcement in Gastonia utilized a CHS to purchase approximately 56 grams of cocaine from ANTHONY PETTUS, who utilized his couriers RANDALL PETTUS and Tammy SMITH.

On July 15, 2015, law enforcement utilized a CHS to purchase approximately 41 grams of cocaine from Albert HANKERSON at his residence in Gastonia.

On September 15, 2015, law enforcement in Gastonia utilized a CHS to purchase approximately 41 grams of cocaine from ANTHONY PETTUS, who utilized his couriers including JAMES HARDIN. During the events leading up to the transaction, JAMES HARDIN retrieved approximately nine ounces of cocaine and placed it into the trunk area of PETTUS's Ford 500.

On September 26, 2015, law enforcement in Gastonia utilized a CHS to purchase approximately 124 grams of cocaine from ANTHONY PETTUS, who utilized his courier, JAMES HARDIN.

On October 13, 2015, law enforcement conducted surveillance of ANTHONY PETTUS, JAMES HARDIN, and Albert HANKERSON in Gastonia. A CHS advised the investigative team that HANKERSON had advised the CHS

4

that he (HANKERSON) had just obtained multiple ounces of cocaine from PETTUS.

On April 20, 2016, law enforcement in Gastonia utilized a CHS to purchase approximately 55 grams of cocaine from ANTHONY PETTUS, who utilized his courier Tammy SMITH.

On June 7, 2016, the law enforcement team utilized a CHS to purchase approximately 42 grams of powder cocaine and 12 grams of crack cocaine from Albert HANKERSON at his residence.

On June 14, 2016, law enforcement executed a search warrant at Antoine WILLIAMS' residence on Shannon Bradley Road in Gastonia and collected several items of evidentiary value, including approximately 6 grams of crack cocaine, a set of digital scales, a plastic container containing green leafy substance (suspected marijuana), a knife with white powdery substance (which field tested positive for cocaine), a tablet-like device connected to a home surveillance camera system, and $2,890 in cash. Prior to execution of the search warrant, law enforcement conducted surveillance of the residence and observed ANTHONY PETTUS at the residence in his Ford 500. Soon after completing the search, law enforcement cleared the area, and surveillance units observed PETTUS arrive again and meet with WILLIAMS at the residence.

On June 26, 2016, law enforcement responded to a call for service for an alleged burglary at Albert HANKERSON's residence on Moran Street. HANKERSON advised responding officers that he had two firearms that were stolen: one a black Charter Arms .38 Special 5-shot revolver and the second was a Smith & Wesson M&P .40 caliber semi-auto pistol, as well as some cash and coins.

On November 17, 2016, law enforcement responded to a drug complaint at Tammy SMITH's residence on Shannon Bradley Road. After receiving consent to search, law enforcement located several items of drug paraphernalia, to include: a set of digital scales, a glass pipe (used for smoking crack cocaine), a small amount of white powder residue (which field tested positive for cocaine), small amounts off white rock like substance (suspected crack cocaine), and a marijuana cigarette.

On November 19, 2016, a CHS advised that there were several ounces of crack cocaine missed during the search the day before (at the residence on Shannon Bradley Road) that were hidden in a vehicle parked in the back yard of the residence. The CHS also advised that a co-conspirator had a concealed firearm in the back bedroom where he stays, in case of any robbery attempts.

On January 18, 2017, law enforcement in Gastonia utilized a CHS to purchase approximately 41 grams of cocaine from ANTHONY PETTUS, who utilized courier Tammy SMITH.

5

>    On March 29, 2017, law enforcement in Gastonia utilized a CHS to purchase approximately 28 grams of cocaine from Xavier HARDIN and ANTHONY PETTUS.
>
>    On April 3, 2017, law enforcement in Gastonia attempted a controlled drug purchase from ANTHONY PETTUS and courier Xavier HARDIN. HARDIN informed the CHS that all they had right then was crack cocaine and that they were waiting for more powder cocaine. Because of the late hour, the law enforcement team postponed the drug purchase.
>
>    On April 11, 2017, law enforcement in Gastonia utilized a CHS to purchase approximately 46 grams of cocaine from ANTHONY PETTUS, who utilized courier XAVIER HARDIN.

(Id., Doc. No. 62 at 1-5).

At a Rule 11 Plea Hearing, on August 16, 2017 (Id., Doc. No. 64), a Magistrate Judge found Petitioner's plea to be knowingly and voluntarily made with an understanding of the charges, potential penalties, and consequences of the plea, that the plea was supported by an independent factual basis, and recommended that the Court accept Petitioner's plea. (Id., Doc. No. 64 at 4).

The Presentence Investigation Report ("PSR") calculated the base offense level in accordance with the Plea Agreement as 32 because Petitioner is accountable for at least 840 grams but less than 2,800 grams of cocaine base and two levels because a firearm was possessed. (Id., Doc. No. 84 at ¶¶ 21-22). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 31. (Id., Doc. No. 84 at ¶¶ 28-30). The PSR's criminal history section scored three criminal history points and two more points were added because Petitioner committed the instant offense while under a criminal justice sentence. (Id., Doc. No. 84 at ¶¶ 44-45). This resulted in a criminal history score of five and a criminal history category of III. (Id., Doc. No. 84 at ¶ 46). The resulting advisory guideline range was 135 to 168 months' imprisonment, however the statutory minimum is 20 years under §§ 841(b)(1)(A) and 851, so the guideline range is 240 months' imprisonment. 5G1.1(b). (Id., Doc. No. 84 at ¶¶ 66-67).

The Government withdrew the § 851 Information at sentencing which reduced the statutory minimum penalty to 10 years' imprisonment and the advisory range to between 135 and 168 months' imprisonment. See (Id., Doc. No. 116) (Statement of Reasons). The Court granted the defense's motion for downward departure over the Government's objection due to Petitioner's age and physical condition. See (Id.). In a Judgment issued on May 16, 2018, the Court sentenced Petitioner to 120 months' imprisonment followed by five years of supervised release. (Id., Doc. No. 115). Petitioner did not appeal.

In a Motion to Correct Sentence pursuant to Rule 35(a) of the Federal Rules of Civil Procedure dated June 3, 2019 that was filed in the criminal case, Petitioner argued *inter alia:* the 840 to 2,800 gram drug amount should have been found by a jury beyond a reasonable doubt; the drug quantity determination requires an evidentiary hearing; and the Court violated Rule 11 by failing to ask Petitioner the 62 questions required by McCarthy v. United States, 394 US 459 (1969). (Id., Doc. No. 124). The Court dismissed the Motion as untimely on June 28, 2019 and instructed the Clerk to mail Petitioner a § 2255 form. (Id., Doc. No. 125).

Petitioner filed the instant § 2255 Motion to Vacate on October 2, 2019.[1] He raises the following claims of ineffective assistance of counsel *verbatim*:

> (1) Defendant was denied ineffective assistance of counsel as guaranteed by the Sixth Amendment to the U.S. Constitution Strickland v. Washington, 466 U.S. 688 (1984); United States v. Nathanel, 938 F.2d 302 (1st Cir. 1991). Counsel failure to properly fully explain the drug quantity in Defendant's Presentence Report and Defendant had an Apprendi issue because the Defendant was only charged with 280 grams crack cocaine. In Defendant's Presentence Report in line No. (21) the probation agency inflated the drug quantity to 840 grams but less than 2,800 grams of cocaine base in which is in violation of the Pinkerton principles, and in United States v. Collins, 4th Cir. case, and further in violation of Apprendi.
>
> (2) Counsel was ineffective for not having a Fatico hearing to argue the increased drug amount of 840 grams but less than 2,800 grams of cocaine base in Defendant's Presentence Report thus causing Defendant to get a higher Base

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule).

7

Offense Level rather than a lower Offense Level based on 280 grams crack cocaine – Counsel failed the Strickland test.

(3) Ineffective Assistance of Counsel failure to properly pursue negotiation and advise Defendant of the McCarthy Rule. See; McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 116, 22 L.Ed.2d 418 (1969), whereas, counsel supposed to make sure that the Court asks 62 interrogation questions before accepting a guilty plea. See; Exhibit (A) McCarthy Rule. Failure to do so constitutes reversible error. See; United States Supreme Court ruling United States v. McCarthy.

(Doc. No. 1 at 4-7).

In the section of the Motion to Vacate that addresses the one-year statute of limitations, Petitioner states "[t]imely file[d] within one year Nunc-Pro-Tunc." (Doc. No. 1 at 12).

On October 11, 2019, the Court ordered Petitioner to explain why his § 2255 Motion to Vacate should be considered timely. (Doc. No. 2). The Court cautioned Petitioner that failure to comply would likely result in dismissal of the § 2255 Motion to Vacate with prejudice as time-barred. (Doc. No. 2 at 3).

Petitioner filed an "Affidavit" arguing that his § 2255 Motion to Vacate should be considered timely based on "excusable neglect" under Rule 6 of the Federal Rules of Civil Procedure. He claims that he suffers from cancer and, during the § 2255 limitations period, he became ill, went to the hospital, and was diagnosed with lung and brain cancer on October 8, 2018 and October 15, 2019. (Doc. No. 3 at 2). He explains that he was hospitalized at the time he filed his Affidavit and expects to undergo further brain surgery. Petitioner has attached records to his Affidavit showing that he was hospitalized between July 26, 2018 and August 24, 2018, that he had a lung biopsy on August 8, 2018. (Doc. No. 3-1 at 1-2)

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence,

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The Court has also determined that a response from the Government is unnecessary.

### III. DISCUSSION

**(1) Limitations**

A one-year statute of limitation applies to motions to vacate under § 2255, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

An otherwise time-barred petitioner is entitled to equitable tolling in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to

9

enforce the limitation against the party." Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)); United States v. Prescott, 221 F.3d 686, 688 (4th Cir. 2000)("§ 2255's limitation period is subject to equitable modifications such as tolling."). Equitable tolling of petitions for collateral review is available only when the petitioner demonstrates "(1) the has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). The second prong of the equitable tolling test is met "only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Menominee Indian Tribe of Wis. v. United States, 136 S.Ct. 750, 756 (2016). As a general matter, "a litigant seeking equitable tolling bears the burden of establishing [the] two elements…." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); see also Holland, 560 U.S. at 653. Under the Fourth Circuit's precedent, equitable tolling is appropriate in those "rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitations period against the party and gross injustice would result." Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (quoting Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (*en banc*)) (citations omitted).

Petitioner's Judgment became final on May 30, 2018 when the time for filing a notice of appeal expired. See Fed. R. App. P. 4(b)(1), (b)(6); United States v. Osborne, 452 Fed. Appx. 294, 295-96 (4th Cir. 2011). His § 2255 petition was therefore due by May 30, 2019 pursuant to § 2255(f)(1). Petitioner filed the instant § 2255 Motion to Vacate 125 days late on October 2, 2019.

Petitioner argues that his Motion to Vacate should be considered timely under "excusable neglect" because he was ill and hospitalized during the limitations period. Petitioner's claim of excusable neglect is liberally construed as a request for equitable tolling. The Court does not doubt

10

that serious medical conditions and hospitalization such as those Petitioner has experienced may constitute extraordinary circumstances beyond an individual's control that can hinder legal filings. However, Petitioner has failed to demonstrate that he exercised due diligence in filing his § 2255 Motion to Vacate. Petitioner has filed records indicating that he was hospitalized for 29 days during the limitations period. He conclusively alleges that he was ill during periods when he was not hospitalized, but he does not explain how his illness prevented him from diligently pursuing his legal rights. If the statute of limitations is considered tolled during the 29 days that Petitioner was hospitalized, the one-year statute of limitations would have expired on June 28, 2019. Petitioner did not file his § 2255 Motion to Vacate until more than three months later on October 2, 2019. The Court notes that Petitioner filed a Rule 35 Motion in the criminal case in early June 2019.[2] Petitioner does not explain why it took him four more months to file the § 2255 Motion to Vacate which essentially reiterates the Rule 35 claims in terms of ineffective assistance of counsel.

Assuming that Petitioner has demonstrated the existence of an extraordinary circumstance, he has failed to demonstrate due diligence, and therefore, the § 2255 Motion to Vacate will be dismissed with prejudice as time-barred. Moreover, even if the § 2255 Motion to Vacate had been timely filed, it would be denied on the merits.

**(2)** **Guilty Plea**

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). He is limited "to attacks on the voluntary

---

[2] The Rule 35 Motion contains a section entitled "Equitable Tolling" but Petitioner makes no reference in that Motion to any of his health issues. (3:17-cv-137, Doc. No. 124 at 5).

11

and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). The court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3).

The Magistrate Judge complied with Rule 11 by asking Petitioner, under oath, whether he understood the nature of the charges, his sentencing exposure, and the consequences of pleading guilty including the rights he was waiving by pleading guilty. See (3:17-cr-137, Doc. No. 64) (Acceptance). Petitioner admitted that he is guilty of Count (1), that he understood the Plea Agreement and agreed with its terms, that he was expressly waiving his appellate and post-conviction rights as stated in the Plea Agreement, and that his plea was not coerced or the result of any promises aside from those contained in the Plea Agreement. (Id., Doc. No. 64 at 3).

Any suggestion that Petitioner's guilty plea was not freely and voluntarily entered is conclusively refuted by the record and is rejected. See Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255

petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

**(3)** **Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell,

13

506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).

Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

Petitioner raises several claims of ineffective assistance of counsel that will be addressed in turn.[3]

**(A)** **Rule 11 Hearing**

Petitioner contends that counsel was ineffective for failing to object that the Rule 11 hearing was insufficient because Petitioner was not asked the 62 questions required by McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). It further appears that Petitioner is attempting to challenge the voluntariness of his plea by alleging that counsel was ineffective for "fail[ing] to properly pursue negotiation and advise [Petitioner] of the McCarthy Rule." (Doc. No. 1 at 7).

---

[3] Petitioner's claims have been liberally construed, restated, and renumbered.

14

Case 3:17-cr-00137-RJC-DCK  Document 128  Filed 05/19/20  Page 14 of 19

Petitioner cites McCarthy for the proposition that the Court was required to ask Petitioner 62 questions before accepting his plea. This contention has no basis is law. All that is required is for the Court to assure itself that the plea is knowingly and voluntarily entered, which is conclusively established on the record. See Section (2), *supra*. Counsel cannot be deemed ineffective for failing to negotiate a plea agreement, advise Petitioner, or object based on this frivolous theory. See Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."). Petitioner has failed to satisfy either of Strickland's prongs and therefore this claim will be denied.

### (B) Drug Amount

Petitioner appears to argue that counsel was ineffective for failing to object that the drug amount for which he was held responsible. He argues that the drug amount of between 840 and 2,800 grams exceeded the 280 grams charged in the Indictment and was not found by a jury beyond a reasonable doubt, violates Pinkerton[4] principles, and required a hearing at sentencing pursuant to United States v. Fatico, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979).

First, Petitioner's argument that the drug amount for which he was sentenced exceeded the amount charged in the Indictment and was not found by a jury beyond a reasonable doubt is meritless. The Supreme Court held in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490; see also Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) (extending Apprendi to factual findings that trigger a statutory

---

[4] Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

mandatory minimum sentence). However, "nothing prevents a defendant from waiving his Apprendi rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." Blakely v. Washington, 542 U.S. 296, 310, 124 S. Ct. 2531, 2541, 159 L. Ed. 2d 403 (2004); see United States v. Booker, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (reaffirming the holding in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the statutory maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.").

Petitioner pled guilty as charged to drug distribution conspiracy involving *at least* five kilograms of cocaine and 280 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1). That offense is punishable by not less than 10 years' imprisonment and not more than life. 21 U.S.C. § 841(b)(1)(A). Petitioner's 120-month sentence did not exceed the statutory maximum sentence of life imprisonment, was the minimum sentence permitted by statute, and was supported by the stipulated drug amount in Petitioner's knowing and voluntary guilty plea. See Blakely, 542 U.S. at 310; Section (1), *supra*. No Apprendi or Alleyne error occurred and Petitioner's contention that counsel should have raised such a frivolous objection is meritless. Knowles, 556 U.S. at 123.841(a)(1).

Second, Petitioner's contention that counsel should have objected to the drug amount contained in the PSR pursuant to the co-conspirator liability principles articulated in Pinkerton is likewise meritless. In Pinkerton, the Supreme Court concluded that acts in furtherance of the conspiracy are "attributable to the others for the purpose of holding them responsible for the substantive offense." Id. 328 U.S. at 647. In the context of conspiracies under § 841, "the jury must

16

determine that the threshold drug amount was reasonably foreseeable to the individual defendant. United States v. Foster, 507 F.3d 233, 251 (4th Cir. 2007). The government bears the burden of proving by a preponderance of the evidence the quantity of drugs for which a defendant should be held accountable at sentencing. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). This burden can be met in several ways, for instance: "by a defendant's acknowledgement during the Rule 11 colloquy or sentencing proceedings that the amount set forth in the indictment or alleged by the Government is correct;" or "when a defendant, without reserving his right to challenge the amount for sentencing purposes, pleads guilty to an indictment that attributes a specific quantity of drugs to the defendant;" or alternatively "by a stipulation of the parties that the court determines to have a reasonable factual basis." Gilliam, 987 F.2d at 1013.

Petitioner pled guilty to the drug distribution conspiracy as charged and he stipulated as a part of his guilty plea that "[t]he amount of cocaine base ("crack cocaine") that was known to or reasonably foreseeable by the Defendant was in excess of eight hundred forty (840) grams but less than two thousand eight hundred (2,800) grams…." (3:17-cr-137, Doc. No. 63 at 2). This stipulation relieved the Government of its burden of proof regarding the drug amount attributable to Petitioner. Counsel cannot be deemed ineffective for failing to object to the drug amount to which Petitioner stipulated as part of his knowing and voluntary guilty plea. See, e.g., Brooks v. United States, 166 F.Supp.2d 366 (D. Md. 2001) (§ 2255 petitioner failed to establish that counsel acted unreasonably by failing to object to the quantity of marijuana alleged to be a part of the conspiracy where petitioner stipulated to the quantity of drugs in his agreement to the guidelines stipulation and in the statement of facts).

Finally, Petitioner contends that counsel was ineffective for failing to request a hearing on drug quantity at sentencing. In Fatico, the Second Circuit stated that an evidentiary hearing is

17

sometimes a reliable way to resolve disputed sentencing issues. Fatico, 603 F.2d at 1057-58 n.9. However, the Fourth Circuit "has never held that an evidentiary hearing is required to resolve disputed matters at sentencing." United States v. Jackson, 155 F.3d 562 (4th Cir. 1998) (table). "Only when the reliability of evidence is an issue has [the Fourth Circuit] held that an evidentiary hearing is necessary." Id. (citing United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991)).

No evidentiary hearing was required in Petitioner's case because he knowingly and voluntarily pled guilty to a conspiracy involving at least 280 grams of cocaine base and stipulated that the drug amount for which he was responsible was more than 840 grams but less than 2,800 grams of cocaine base. The PSR was prepared in accordance with the stipulated drug amount and, therefore, the reliability of the drug amount was not at issue. No evidentiary hearing was required under these circumstances. See, e.g., Jackson, 155 F.3d at 562 (finding a Fatico claim to lack merit because review of the record does not reveal that an evidentiary hearing was necessary to resolve a factual dispute); King v. United States, 2015 WL 5470246, at *7 (N.D.W. Va. Sept. 16, 2015) (there was nothing improper about that calculation, which the Petitioner stipulated to, and any additional hearing on the matter would be superfluous). Counsel cannot be deemed ineffective for failing to make a frivolous request for a hearing about an undisputed drug amount. Knowles, 556 U.S. at 123.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed with prejudice as time-barred and, alternatively, is denied on the merits.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: May 19, 2020

Robert J. Conrad, Jr.
United States District Judge